2023 IL App (1st) 221381-U

No. 1-22-1381

Second Division
September 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| MARIA OCAMPO, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19 L 7045 |
| | ) | |
| GROSSINGER CITY AUTOCORP, INC., | ) | Honorable |
| | ) | Catherine A. Schneider |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not err in granting summary judgment in favor of defendant; neither did the court abuse its discretion in denying plaintiff's motion for reconsideration nor her motion for leave to file an amended complaint to include a theory of *res ipsa loquitor*.

¶ 2     Plaintiff-appellant Maria Ocampo filed a complaint against defendant-appellee Grossinger City Autocorp, Inc., alleging a single claim of negligence, following an injury she sustained on Grossinger's premises. The circuit court granted Grossinger's motion for summary judgment. On

¶ 1    No. 1-22-1381

appeal, Ocampo argues that the circuit court erred in granting summary judgment in favor of Grossinger based on premises liability and in denying Ocampo's motions for reconsideration and leave to file an amended complaint to add a claim of *res ipsa loquitor*. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On June 26, 2019, Ocampo instituted an action against Grossinger, alleging negligence based on injuries she sustained on its property on July 1, 2017.

¶ 5    The undisputed facts of the case reveal the following. Grossinger operated Grossinger City Toyota, a Toyota dealership, which was located at 1561 North Fremont Street in Chicago, Illinois. The business also offered maintenance and service for those vehicles. On July 1, 2017, Ocampo brought her car to Grossinger for servicing. While her car was being serviced, Ocampo waited in the waiting room. When her car was ready, she paid for the service and walked towards the area where she was to pick up her car. The sliding glass doors opened when Ocampo approached them. As she crossed through the open sliding glass doors, the doors closed on her and she fell to the floor and was injured. An ambulance was called, and Ocampo was taken to the hospital.

¶ 6    In her complaint, Ocampo alleged that at all times, Grossinger owed "a duty to exercise ordinary care for the safety" of Ocampo and Grossinger "was negligent one or more of the following ways:"

"(a) Chose to install a defective sliding glass door;

(b) Chose to keep a defective sliding glass door after it became apparent that it malfunctioned;

(c) Chose to install a sliding glass door with defective sensors;

- 2 -

(d) Chose not to adjust the sliding glass door sensors so that the sliding glass door would

remain open while patrons were under or near the frame of the door;

(e) Chose to install a sliding glass door that lacked sensors on the closing edges of the door;

(f) Was otherwise careless and negligent in the premises."

Finally, she alleged that "[a]s a direct and proximate result of one or more of the foregoing careless and negligent acts or omissions" of Grossinger, Ocampo "sustained injuries of a personal and pecuniary nature."

¶ 7    On August 7, 2019, Grossinger filed an answer to the complaint, denying that Ocampo was injured and denying all allegations of negligence.

¶ 8    During discovery, only Gary Grossinger (Gary) was deposed.

¶ 9    In his deposition, which took place on September 3, 2020, Gary, the president of Grossinger, testified as to the following. Grossinger operated at 1561 N. Fremont from September 2009 to April 2018, at which time the business was sold to AutoCanada. Grossinger "put in" the sliding glass doors within a year of September 2009 during the renovation of the building. Gary testified that he knew Ocampo had been injured but he did not know any more about her injuries and he learned about the injury from an employee. He testified that he did not know how Ocampo was injured and he did not know what Ocampo had been doing prior to the injury. He stated he did not know if there were any witnesses to the incident. He testified that if there was any surveillance footage of the sliding glass doors, he would not have access to it. He admitted that, in July 2017, Grossinger was responsible for the maintenance of the sliding glass doors. The doors were never replaced or upgraded after they were installed, and to his knowledge, there were never any repairs on the doors, including after this incident. He testified that he did not know how the

sliding glass doors functioned. At one time, there was a maintenance contract for the doors with Stanley Doors and that contract automatically renewed each year. Gary testified that the contract provided that Stanley would send service technicians to inspect the door, but Gary was unaware of what those inspections entailed and he was unaware of any repairs that Stanley deemed necessary. Gary was asked, "To your knowledge, sir, if the sliding glass doors are operating properly, they should not close on a person. Is that correct?" He responded, "I would assume they wouldn't close on somebody, no." Gary identified Rodrigo Delgado as the service advisor for Grossinger.

¶ 10    On March 2, 2021, Grossinger filed a motion for summary judgment. Therein, Grossinger argued that Ocampo has no evidence of negligence and no evidence of a dangerous condition. Grossinger set forth the elements of a premises liability claim and asserted that Ocampo had no evidence to establish proximate cause. Grossinger pointed to Ocampo's use of the word "chose" in her list of Grossinger's negligent acts and stated that she "does not have a single piece of evidence that even suggests that the door in question was 'defective' in any respect in the first place" and "zero evidence that Grossinger 'chose' to 'install' or 'keep' such a 'defective' door at its place of business." It further stated that Ocampo's complaint was completely based on conjecture and speculation. Finally, Grossinger noted that Ocampo "does not currently plead a premises liability claim" but it would be entitled to summary judgment under that theory of liability as well because there was no constructive or actual notice of the defective condition.

¶ 11    On March 23, 2021, the circuit court entered an order administratively dismissing the matter for want of prosecution. Ocampo subsequently filed a motion to vacate that order, which the court granted on March 31, 2021. The matter was then reinstated in the court's docket. This

led to an administrative delay in the action until Grossinger filed a motion to amend the case management order. On December 30, 2021, the circuit court granted Grossinger leave to file a motion for summary judgment *instanter* and set a briefing schedule.

¶ 12    On January 19, 2022, Ocampo filed a response, pointing out that Grossinger failed to attach to its motion the transcripts from Gary Grossinger's deposition. Ocampo argued that Grossinger failed to satisfy its initial burden because it presented no evidence showing that Ocampo could not establish proximate cause. In regards to Grossinger's issue with the word "chose," Ocampo stated that that word "simply indicates that decisions regarding the installation, maintenance and upkeep of the sliding glass door in which Ocampo was injured was part of [Grossinger's] responsibility in its management of Grossinger." Lastly, she argued that Grossinger's reference to premises liability was incorrect where no such claim is before the court.

¶ 13    On February 7, 2022, Grossinger filed its reply, stating that discovery in the action was closed and the only deposition was that of Gary, who testified that he did not know how the doors operated, he did not personally maintain them, and he cannot testify that the doors were "defective." As such, "all of the evidence in this case, even when viewed most favorably to [Ocampo], utterly fails to establish a "defective" door (and how such a "defective" door caused the alleged incident to occur)[.]" Additionally, Grossinger cited to *Jones v. Pneumo Abex LLC*, 2019 IL 123895, for the proposition that, because all of relevant evidence is already before the court, the motion for summary judgment is not practically different than a motion for a directed verdict at trial.

¶ 14    On March 16, 2022, the circuit court granted Grossinger's motion for summary judgment, finding that there was no evidence in the record to support Grossinger's breach of duty and

Ocampo failed to create a triable issue of fact as to whether Grossinger "breached its duty in causing her injury." In so finding, the court set forth the elements for an ordinary negligence claim and cited to Ocampo's complaint which alleged that Grossinger knowingly installed defective doors and/or sensors or kept defective doors despite knowing they were defective. The court then stated that there was nothing in the record to show that Grossinger knew the doors were defective prior to the incident or that the doors were even defective.

¶ 15    On April 14, 2022, Ocampo filed a motion for reconsideration, and in the alternative, she filed a motion to amend the complaint to add a claim of *res ipsa loquitor*.[1] In her motion for reconsideration, she argued that Grossinger failed to support its summary judgment motion with evidentiary facts and therefore Grossinger "failed to satisfy its initial burden of production[.]" She also argued that the circuit court incorrectly applied the notice requirement for premises liability claims to Ocampo's complaint. In her motion to amend her complaint, Ocampo sought to add allegations of *res ipsa loquitor* and specifically that Grossinger "knew or should have known that its sliding glass doors would close on persons standing in the middle of the doors" and Grossinger "chose not to have a system of inspection[.]" She argued that the proposed amendment was timely, would cure her defective negligence pleading, and would not prejudice Grossinger.

¶ 16    On August 22, 2022, the circuit court denied both motions. As to the motion for reconsideration, the court cited to Ocampo's complaint and stated that it granted Grossinger's summary judgment motion because Ocampo "did not present any evidence to support her own

---

[1] Ocampo did not attach her proposed amended complaint to the motion. She asserts on appeal that this was in conformity with the Circuit Court of Cook County General Administrative Order 20-9 § 3.4(F) (Dec. 17, 2020), which provides that proposed pleadings may not be attached to any motion as an exhibit or e-filed until leave of court is granted.

allegations" where she "expressly alleged" that Grossinger "acted negligently by way of knowingly installing (or knowingly allowing its patrons to use) defective doors." As to her motion to amend her complaint, the court found that all four of the factors set forth in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992), weighed against Ocampo.

¶ 17    This appeal followed.

¶ 18                            II. ANALYSIS

¶ 19    Ocampo challenges the circuit court's grant of summary judgment in favor of Grossinger, as well as the denial of her motion for reconsideration. She also challenges the circuit court's denial of her motion to amend her complaint to include a theory of *res ipsa loquitor*.

¶ 20                         A. Summary Judgment

¶ 21    Summary judgment is appropriate where " 'where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2020)). " 'Genuine' means there is evidence to support the position of the nonmoving party." *Pekin Ins. Co. v. Adams*, 343 Ill. App. 3d 272, 275 (2003). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). The party moving for summary judgment is not required to prove its case or disprove the nonmovant's case, but instead may be "entitled to summary judgment by demonstrating the absence of a genuine issue of material fact." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. The nonmovant may defeat a summary judgment motion by demonstrating that a question of fact does exist. *Id.* To do so, the nonmovant "must

come forth with some evidence that arguably would entitle [them to] recovery at trial." *Id.* "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 22    Our review of the court's decision is *de novo*. *Adams*, 211 Ill. 2d at 43. We may affirm the court's grant of summary judgment for any basis supported by the record, regardless of whether the trial court relied on that basis or its reasoning was correct. *Cole v. Paper Street Group, LLC*, 2016 IL App (1st) 180474, ¶ 41.

¶ 23    As both parties acknowledge, Grossinger's motion for summary judgment is a *Celotex*-type motion. This term is derived from *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), and is a motion in which a defendant seeks summary judgment based on the plaintiff's lack of proof regarding matters outside the plaintiff's control and knowledge. *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶¶ 23, 25-28. Whether a summary judgment motion is characterized as traditional or as *Celotex*-type is significant because strict compliance with the affidavit requirement in Supreme Court Rule 191(b) (eff. Jan. 4, 2013) is applicable to traditional motions.[2] *Jiotis*, 2014 IL App (2d) 121293, ¶ 26. Because *Celotex*-type motions assert that the nonmovant's evidence is simply insufficient, compliance with the affidavit requirement is not automatically necessary. *Id.* ¶ 25; see *Celotex*, 477 U.S. at 325. *Celotex*-type motions only require that the

---

[2] Rule 191 sets forth the requirements for affidavits filed with motions for summary judgment. An affidavit submitted under this rule is a substitute for testimony at trial and strict compliance is necessary to insure that the trial judge is presented with valid evidentiary facts. *Solon v. Godbole*, 163 Ill. App. 3d 845, 851 (1987).

nonmovant had an adequate opportunity to conduct discovery prior to summary judgment. *Id.* ¶ 26.[3]

¶ 24    We first reject Ocampo's circular argument that Grossinger must affirmatively present evidence showing that she has no evidence to support her claim. Specifically, she argues that Grossinger was required to specify how Ocampo could not prove her case based on the theory of negligence and Grossinger only presented "conjecture" in its motion and law relevant to premises liability, which Grossinger acknowledged had not been alleged in the complaint. However, on a *Celotex*-type motion, the defendant satisfies its initial burden of production when it " 'points out' the absence of evidence supporting the plaintiff's position." *Celotex*, 477 U.S. at 325; see also *Selby v. O'Dea*, 2020 IL App (1st) 181951, ¶ 218 ("[I]n a *Celotex* motion, the defendant puts forth no affirmative evidence; it merely argues that plaintiff has no evidence to prove its case."). As such, it is unclear to this court what evidence Grossinger could obtain to prove Ocampo's lack of evidence, and we are unaware of any requirement of Grossinger to do so.

¶ 25    Rather, as we have stated, Ocampo is required as the nonmovant to come forward "with some evidence that arguably would entitle recovery at trial." *Berke*, 2016 IL App (1st) 150397, ¶

---

[3] We note Grossinger's entreaty to this court to treat his motion for summary judgment like a motion for a directed verdict and cites to *Jones v. Pneumo Abex LLC*, 2019 IL 123895, for support. In that case, the question at issue was whether the defendants "engaged in a civil conspiracy to conceal the dangers of asbestos"; however, those claims had already been frequently litigated in Illinoi courts. *Id.* ¶ 22. Where those cases had proceeded to trial, reviewing courts had consistently concluded that the defendants could not be liable for civil conspiracy. *Id.* In the case before it, the appellate court "summarily distinguished" those nearly identical cases because the appeals were from motions for judgment notwithstanding the verdict rather than summary judgment. *Id.* ¶ 23. On appeal, our supreme court stated that in cases where there is a "long and well-documented historical record" that has been thoroughly tested over several lawsuits and the parties' pleadings and other materials are "exhaustive[,]" "there is no practical difference between the standard for summary judgment and that governing directed verdicts." *Id.* ¶¶ 24-25. It is clear to this court that the context for that comparison is specific to that case. As such, we believe that our analysis in which we apply the well-established principles for summary judgment motions is appropriate  here.

31. Although a plaintiff is not required to prove her entire case at this stage of litigation, she is nonetheless required, as the nonmoving party, to present some factual basis and evidentiary facts to support the elements of her cause of action. *Aalbers v. LaSalle Hotel Properties*, 2022 IL App (1st) 210494, ¶ 15. "[A] plaintiff cannot rely solely on the allegations in her complaint in order to raise a genuine issue of material fact." *Id.*

¶ 26     Before turning to the merits of Ocampo's claim of negligence, we address her arguments targeted at the circuit court's ruling.

¶ 27     Ocampo devotes a large part of her brief to her argument that the circuit court improperly relied on the law for a premises liability claim rather than ordinary negligence and improperly imputed a requirement of notice for her claim of negligence. In particular, she states that the trial court concluded that Grossinger owed her "no duty on the basis of lack of notice using a premises liability analysis." She also argues the trial court "failed to conduct a duty analysis in a negligence case."

¶ 28     However, as we have stated, we review the grant of summary judgment *de novo*, meaning that "we examine the evidence unconstrained by the reasoning of the trial court." *Zameer v. City of Chicago*, 2013 IL App (1st) 120198, ¶ 12. As such, we need not dissect the reasoning for its decision on *de novo* review.

¶ 29     In any case, the court's written order clearly demonstrates that the court analyzed Ocampo's claim under the appropriate elements for ordinary negligence. Contrary to Ocampo's assertion that the court applied a requirement of "knowledge" or "notice" to her claim of negligence, the court's use of the word "knowingly" in its analysis was in reference to Ocampo's own allegations that Grossinger "[c]hose" to install or keep defective doors or sensors.

Specifically, the court stated that her complaint alleged Grossinger "acted negligently by, *inter alia*, choosing to install sliding glass doors with defective sensors and/or defective sliding doors, and choosing 'to keep a defective sliding glass door after it became apparent that it malfunctioned[.]' " The court went on to find that there was no evidence in the record that Grossinger "knew the doors were defective" and no evidence that the doors were even defective. The word "chose" is the past tense of "choose," which is defined as "to select freely after consideration." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/chose (last visited August 31, 2023). As such, Ocampo's word choice suggests intentional conduct. It appears that the court reasonably construed her word choice as alleging that Grossinger intentionally decided with knowledge to install or keep defective doors and sensors.

¶ 30     Ocampo contends that her use of the word "chose" as opposed to "fail" is "no reason to enter summary judgment" for Grossinger. We agree. "When analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called." *In re Haley D.*, 2011 IL 110886, ¶ 64. Here, the court appropriately analyzed Ocampo's claim of negligence precisely as it was alleged in her complaint. Additionally, we point out that the court also found that there was no evidence in the record that the doors or sensors were even defective. As such, summary judgment was not solely based on Ocampo's use of the word "chose."

¶ 31     Similarly, there is no basis for Ocampo's argument that the circuit court did not conduct a proper duty analysis where the circuit court specifically stated that it was granting summary judgment because it could not find any evidence in the record to support Grossinger's "alleged

*breach* of duty" and Ocampo "failed to create a triable issue of fact as to whether [Grossinger] *breached* its duty in causing her injury." (Emphasis added.)

¶ 32    We now turn to the merits of Ocampo's claim of negligence.

¶ 33    To prevail in an action for negligence, the plaintiff must prove that the defendant owed a duty, the defendant breached that duty, and defendant's breach was the proximate cause of injury to the plaintiff. *Bell v. Hutsell*, 2011 IL 110724, ¶ 11. "A defendant in a negligence suit is entitled to summary judgment if he can demonstrate that the plaintiff has failed to establish a factual basis for one of the required elements of a cause of action for negligence." *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 658 (1993). "If the plaintiff cannot establish any element of his cause of action, summary judgment is proper." *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 28.

¶ 34    For the following reasons, we conclude that summary judgment in favor of Grossinger was proper.

¶ 35    First, based on the record before us, Ocampo has not shown that Grossinger "chose" to install or keep defective doors or sensors. There is clearly no evidence in the record that Grossinger was aware of any issues or defects with the doors or their sensors. Gary testified that he did not know how the injury occurred or how the doors or sensors functioned. He further testified that Grossinger had a service agreement with a maintenance company to inspect the sliding glass doors, but he had no knowledge as to what the maintenance company's inspections entailed. He also testified that he was never informed of any problems or repairs with the doors by the maintenance company. From this evidence, which is the only evidence before us, there is no factual basis to support Ocampo's allegations as stated in her complaint.

¶ 36    Second, even if we do not strictly apply Ocampo's language to require evidence that Grossinger expressly "chose" to act negligently, she also has not presented any evidence to create a genuine issue of material fact regarding proximate cause, *i.e.* whether Grossinger's alleged negligence caused her injuries. See *National Tractor Parts, Inc. v. Caterpillar Logistics, Inc.*, 2020 IL App (2d) 181056, ¶ 38 ("If a plaintiff fails to establish one element of the cause of action, summary judgment in favor of the defendant is appropriate.").

¶ 37    "[P]roximate cause can only be established when there is a reasonable certainty that the defendant's act caused the injury." *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795 (1999). Although "proximate cause is generally a question of fact, it becomes a question of law when the facts alleged indicate that a party would never be entitled to recover." *Aalbers*, 2022 IL App (1st) 210494, ¶ 16. Proximate cause may be established through direct or circumstantial evidence. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473 (2010).

¶ 38    Here, Ocampo asserts that her negligence claim is based on circumstantial evidence. "Circumstantial evidence is the proof of certain facts and circumstances from which the fact finder may infer other connected facts which usually and reasonably follow according to the common experience of mankind." *Eskridge v. Farmers New World Life Insurance Co.*, 250 Ill. App. 3 603, 610 (1993). A fact can be established using circumstantial evidence as long as "the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473 (2010). "If a plaintiff cannot identify the cause of his injury or can only guess as to the cause, a court cannot find the defendant liable for negligence." *Barclay v. Yoakum*, 2019 IL App (2d) 170962, ¶ 9 (citing *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817 (1981)).

¶ 39    We recognize that an inference could be drawn that the doors must have in some way been defective based solely on Ocampo's injury. That inference, however, does nothing to prove that Grossinger's conduct was the proximate cause of her injury. See *Kellman v. Twin Orchard Country Club*, 202 Ill. App. 3d 968, 974 (1990) ("The occurrence of an accident does not support an inference of negligence, and, absent positive and affirmative proof of causation, [a] plaintiff cannot sustain the burden of establishing the existence of a genuine issue of material fact."). As we have already made clear, Gary's testimony does not provide any additional evidence showing that Grossinger's alleged negligence was the cause of Ocampo's injury. Gary testified that Grossinger had an agreement with a maintenance company to service the sliding glass doors. He did not know how the injury occurred, how the doors functioned, or what the maintenance company's inspection entailed. He further testified that he was unaware of any repairs ever needed or conducted on the sliding glass doors.

¶ 40    In fact, Gary's testimony underscores how little evidence is in the record. There are no witnesses to the incident, there is no surveillance footage of the incident, there is no evidence regarding the function of the doors and the sensors, and there is no testimony from anyone who serviced the sliding glass doors. Moreover, Grossinger also pointed out in its motion that Ocampo would not be able to acquire sufficient evidence to support her claim where discovery was closed and the only other testimony would be provided by Ocampo herself, and she had failed to demonstrate how her own testimony would prove that Grossinger "chose" to install or keep defective doors or sensors. See *Kleiss v. Bozdech*, 349 Ill. App. 3d 336, 350 (2004) ("[T]he defendant must show that the plaintiff cannot acquire sufficient evidence to make its case.").

¶ 41    Ocampo asserts that her claim was entirely proved by circumstantial evidence and, for that reason, it is not necessary to present witnesses knowledgeable as to the workings, operation, or maintenance of the doors or evidence that the doors were actually defective. However, the inference that Grossinger caused any alleged defective condition of the sliding glass doors is purely speculative, particularly where there is evidence that Grossinger contracted with a maintenance company to inspect and service the sliding glass doors. See *Majetich v. P.T. Ferro Construction Co.*, 389 Ill. App. 3d 220, 224-25 (2009) (stating that facts will not be established where more than one conclusion can be drawn); *Keating*, 401 Ill. App. 3d at 474 (finding that "the existence of multiple inferences regarding causation [did] not create a triable issue of fact"). There is no reasonable certainty that Grossinger's acts or omissions, as opposed to, for instance, the maintenance company or Grossinger's maintenance staff for that matter, caused the injury. See *Britton v. University of Chicago Hospitals*, 382 Ill. App. 3d 1009, 1012 (2008) (finding that the plaintiff could not show that the defendant's alleged negligence proximately caused the revolving glass door to shatter where it was just as logical to infer that the plaintiff caused the glass to shatter); *Watts v. Bacon & Van Buskirk Glass Co.*, 18 Ill. 2d 226, 232 (1959) (finding that there was no evidence that the glass company was negligent in supplying or installing the glass door and the mere fact of the plaintiff's injury "does not authorize a presumption or inference that the defendant glass company was negligent"). As such, based on our review of the record, we conclude that Ocampo has failed to establish an element of her negligence claim. See *Kimbrough v. Jewel Cos., Inc.*, 92 Ill. App. 3d 813, 818-19 (1981) (finding that the plaintiff's failure to prove one element of negligence, *i.e.*, causal connection between condition and fall, entitles the defendant to summary judgment on the entire negligence claim).

¶ 42    In one final attempt to save her complaint, Ocampo argues that Grossinger's contract with the maintenance company does not relieve it from liability for the doors' malfunction. Although that may be true, Ocampo has, at no point, asserted any claims or allegations of an agency relationship or vicarious liability. See *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8 ("It is well-settled law in Illinois that issues, theories, or arguments not raised in the trial court are forfeited and may not be raised for the first time on appeal."). In fact, she refers to her own lack of evidence on this point, stating "there is no evidence indicating that the entity that serviced those doors was qualified to service those doors; how often they were serviced; how they were serviced; and, what repairs were made, to those doors." It is clear that Ocampo is attempting to place the onus of obtaining evidence on Grossinger, despite the fact that it is her burden to present a factual basis to support her allegations. See *Aalbers v. LaSalle Hotel Properties*, 2022 IL App (1st) 210494, ¶ 15.

¶ 43    Accordingly, we hold that there were no genuine issues of material fact with respect to Ocampo's negligence claim and the circuit court's grant of summary judgment in favor of Grossinger was proper.

¶ 44    Ocampo also challenges the circuit court's denial of her motion for reconsideration. The purpose of a motion to reconsider is to bring to the court's attention "(1) newly discovered evidence which was not available at the time of the first hearing, (2) changes in the law, or (3) error in the court's previous application of existing law." *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991). "A ruling on a motion to reconsider is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Aalbers*, 2022 IL App (1st) 210494, ¶ 39. Because we have found that the circuit court's grant of

Grossinger's motion for summary judgment was proper and there was no misapplication of the law for ordinary negligence, we find no basis to overturn its denial of Ocampo's motion to reconsider.

¶ 45                              B. Motion to Amend Complaint

¶ 46    Finally, Ocampo challenges the circuit court's denial of her motion to file an amended complaint to add a claim of *res ipsa loquitor*.

¶ 47    Preliminarily, we note that Ocampo failed to provide the standard for review for a circuit court's denial of a motion to amend the complaint. See Ill. S. Ct. R. 341(h)(3) ("The appellant must include a concise statement of the applicable standard of review for each issue."). She also failed to set forth the *Loyola* factors (discussed below) and her arguments in regards to them until her reply brief, after Grossinger pointed out her omission. See Ill. S. Ct. R 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief[.]"). Nonetheless, it is within our discretion to address points made in the reply brief. See *Joyce v. Explosive Technologies Intern., Inc.*, 253 Ill. App. 3d 613, 616 (1993).

¶ 48    Section 2-616(a) of the Code of Civil Procedure provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms[.]" 735 ILCS 5/2-616(a) (West 2020). Additionally, section 2-1005(g) states that "[b]efore or after entry of a summary judgment, the court shall permit pleadings upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2020); but see *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 521-22 (2007) (recognizing that there was "a strong argument to be made for the proposition that the right to amend following a final summary judgment should be more restricted than the right to amend prior to summary judgment or where the summary judgment is interlocutory"). The right to amend, however, is not

absolute or unlimited. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 219 (2010). A court must consider the following factors in determining whether to grant leave to amend a pleading: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). "The party seeking leave to amend bears the burden of demonstrating that all four factors favor the relief requested." *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 36. The decision of whether to grant leave to amend a complaint rests within the sound discretion of the trial court, and we will affirm absent an abuse of that discretion. *I.C.S. Illinois*, 403 Ill. App. 3d at 219. "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." *United Conveyor Corporation*, 2017 IL App (1st) 162314, ¶ 35.

¶ 49    As to the first factor, "[w]here it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied." *Regas v. Associated Radiologists, Inc.*, 230 Ill. App. 3d 959, 968 (1992). For this reason, the court may consider the merits of the claim in the proposed amended pleading. *I.C.S. Illinois*, 403 Ill. App. 3d at 220.

¶ 50    The doctrine of *res ipsa loquitor* "permits the trier of fact to infer negligence based on circumstantial evidence[.]" *Dyback v. Weber*, 114 Ill. 2d 232, 238 (1986). The determination of whether *res ipsa loquitor* applies is a question of law[.]" *Darrough v. Glendale Heights Community Hospital*, 234 Ill. App. 3d 1055, 1060 (1992). The plaintiff must prove that "he was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence (the

probability element) (2) by an agency or instrumentality within the defendant's exclusive control (the control element)." *Johnson v. Armstrong*, 2022 IL 127942, ¶ 35. Stated another way, "the court in the first instance must decide based on whether the plaintiff has pleaded facts that would ever establish that the defendant had exclusive control over the instrumentality of the plaintiff's injury and that the injury is otherwise unexplainable absent the defendant's negligence." *Darrough*, 234 Ill. App. 3d at 1060.

¶ 51     Here, the circuit court concluded that the inclusion of *res ipsa loquitor* would not cure Ocampo's pleadings because "the proposed *res ipsa* claim—like her negligence claim—would still require [Ocampo] to establish [Grossinger's] knowledge of the defective doors." In her motion, Ocampo specifically averred that her amended pleading would add that Grossinger "knew or should have known that its sliding glass doors would close on persons standing in the middle of the doors and that the defendant chose not to have a system of inspection that would have discovered the defective condition of the sliding glass door." The circuit court then was correct in concluding that Ocampo would need to prove, pursuant to her own proposed allegations, that Grossinger knew or should have known about the defective doors and there was no evidence in the record to support that allegation.

¶ 52     Moreover, "[w]here there are differing possible causes of an accident and a plaintiff cannot establish that it was defendant's actions which caused the accident, *res ipsa loquitor* will not be applicable." *Napoli v. Hinsdale Hospital*, 213 Ill. App. 3d 382, 388 (1991). In this case, there was evidence that Grossinger contracted with a maintenance company to maintain, inspect, and service its sliding glass doors. Because the record before us suggests at least two possible entities responsible for any alleged defect, *res ipsa loquitor* is not applicable. *Nichols v. City of Chicago*

*Heights*, 2015 IL App (1st) 122994, ¶ 46 ("[T]he defendant's responsibility for a specific cause of an event is proven by eliminating the responsibility of any other person for that cause." (citing *Lynch v. Precision Machine Shop, Ltd.*, 93 Ill. 2d 266, 273 (1982)). As such, Ocampo cannot prevail on the first factor.

¶ 53     Although reviewing courts need not proceed any further in its *Loyola* analysis if the proposed amendment fails the first factor, we nonetheless address the other three factors. See *Hayes Mechanical, Inc. v. First Indus, L.P.*, 351 Ill. App. 3d 1, 7 (2004).

¶ 54     "Prejudice to the party opposing an amendment is the most important of the *Loyola* factors, and 'substantial latitude to amend will be granted when there is no prejudice or surprise to the nonmovant.' " *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525 (2007) (quoting *Paschen Contractors, Inc. v. City of Kankakee*, 353 Ill. App. 3d 628, 638 (2004)). Prejudice is shown where delaying the amendment " 'leaves a party unprepared to respond to a new theory at trial.' " *Id.* (quoting *Miller v. Pinnacle Door Co.*, 301 Ill. App. 3d 257, 261 (1998)).

¶ 55     Grossinger argues that because this case was filed in 2019, it was set for trial certification on May 3, 2021, and discovery had been closed for nearly a year, Grossinger would have been prejudiced by its inability to disclose or depose any additional witnesses to rebut the new theory. Ocampo argues in opposition that Grossinger would not have been prejudiced because if it needed additional discovery, it could have moved to amend the case management order, as it had done previously. Although we do not believe that Grossinger would have been hindered in responding to that theory based on the current record, we find that Grossinger would nonetheless have suffered prejudice due to additional needless litigation, especially where Ocampo was seeking to add a new theory of negligence *after* summary judgment had been granted. See *Geisler v. Everest National*

*Insurance Co.*, 2012 IL App (1st) 103834, ¶ 102 (finding prejudice to the defendant where the amendment "would allow [the] plaintiff a 'second bite at the apple' "); *Tires 'N Tracks, Inc. v. Dominic Fiordirosa Construction Co.*, 331 Ill. App. 3d 87, 95 (2002) ("It is improper practice to engage in piecemeal litigation, seeing one theory of the case to conclusion before proposing another.").

¶ 56    The third factor, which is timeliness, and the fourth factor, *i.e.* whether there were previous opportunities to amend, also weigh in favor of Grossinger. A court may deny a motion to amend if it was made "after an unreasonable length of time." *Loyola*, 146 Ill. 2d at 275. "The stage of litigation at which a proposed amendment is brought is certainly a relevant consideration." *Hartzog*, 372 Ill. App. 3d at 525-26. Here, we cannot say that Ocampo's request to add a claim of *res ipsa loquitor* was timely where it was made five years after the injury occurred and three years after her complaint was filed. See *United Conveyor Corporation*, 2017 IL App (1st) 162314, ¶ 37 (finding the motion to amend was not timely where it was filed 22 days after the trial court entered summary judgment and more than three years after it filed its complaint). Moreover, prior to the filing of Grossinger's motion for summary judgment, Ocampo was in possession of all the facts necessary she claims support her theory of *res ipsa loquitor* as Gary's deposition was taken in 2020 and discovery had been closed for 11 months. There was also nothing preventing Ocampo from amending her complaint in the multiple years the case was pending, prior to the closure of discovery and prior to the court's summary judgment ruling. See *Hartzog*, 372 Ill. App. 3d at 526 (pointing out that the plaintiffs never explained their failure to raise the issue at an earlier time). We would also point out that Grossinger originally filed its motion for summary judgment in March 2021 but due to administrative delay, a briefing schedule was not set until December 2021.

Again, this suggests that Ocampo had sufficient opportunity to amend her complaint prior to the court's grant of summary judgment. See *Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 531 (1992) (trial court did not abuse its discretion in denying plaintiff leave to amend his complaint to include a theory of *res ipsa loquitor* after the court granted summary judgment in favor of the defendant where the plaintiff had opportunity to include the claim earlier and the plaintiff waited 29 months to add the claim).

¶ 57    Nonetheless, Ocampo contends that, because Grossinger never challenged her pleadings previously, "[t]here was no reason for [her] to seek to amend her complaint." This contention is not well taken. First, it is hardly the defendant's responsibility to bring to the plaintiff's attention flaws in the complaint so that the plaintiff may cure those defects. Second, as we have stated, the theory of *res ipsa loquitor* was available to Ocampo at all stages of litigation in this action. See *Martin v. Yellow Cab Co.*, 208 Ill. App. 3d 572, 577 (1990) (affirming the denial of the motion to amend where the same facts were available when the plaintiff filed the motion that were available when the plaintiff filed the complaint 20 months earlier).

¶ 58    As such, where all four *Loyola* factors weigh in favor of Grossinger, it was not an abuse of discretion for the circuit court to deny Ocampo's motion for leave to amend her complaint.

¶ 59                                    III. CONCLUSION

¶ 60    For the reasons stated, we affirm the judgment of the circuit court.

¶ 61    Affirmed.